**Gary BURGESS and Marilee Burgess, Plaintiffs,**

v.

**Michael WEST and The City of Overland Park, Kansas, Defendants.**

Civ. A. No. 92–2088–0.

United States District Court,
D. Kansas.

March 25, 1993.

Thomas E. Foster, Foster & Foster, Overland Park, KS, for plaintiffs.

A. Bradley Bodamer, Eric D. Braverman, Morrison & Hecker, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendants' motions for summary judgment (Docs. # 8, 31, 33, 35, and 37). For the reasons set forth below, the several motions will be granted in part and denied in part.

### I. *Factual Background*

This matter arises from an October 13, 1989, incident involving plaintiffs and Officer West, a reserve police officer for the defendant City of Overland Park ("City"). The undisputed facts relevant to the motions in question are as follows. At all pertinent times, defendant Michael West was a reserve police officer with the City of Overland Park. West had received all standard police officer training as required for the job of reserve officer. The City had a written policy concerning use of force by police officers. Officer West had knowledge of that policy. All acts of defendant West were done with express or implied authority of defendant City and were within the scope of West's employment with the City.

At 10:03 p.m. on October 13, 1989, Officers West and McCullough were dispatched to

respond to a complaint about a loud party at 9410 West 89th Street, Overland Park, Kansas. The juvenile resident at that address asked the officers to aid in breaking up the party and the officers proceeded to do so. There were "wall-to-wall" people and "wall-to-wall" cars in the street in front of 9410 West 89th Street when plaintiff Gary Burgess drove his Triumph convertible down the 9400 block of 89th Street where Officer West was attempting to break up the party. Plaintiff Marilee Burgess was a passenger in the car at the time. The top on the convertible was down. Officer West heard plaintiffs' car approach and saw the headlights. Officer West motioned with his flashlight to try to slow or stop the plaintiffs' car. However, Gary Burgess continued down the street. An encounter ensued between Officer West and the plaintiffs. The exact details of the encounter are disputed. However, the parties agree that both plaintiffs' car and Marilee Burgess were hit by Officer West's flashlight. Gary Burgess then stopped the car, got out, and approached Officer West.

Officer West smelled alcohol on Gary Burgess's breath. Burgess admits that he had consumed at least three to four beers earlier that evening. Burgess took a field sobriety test which he admits he did not pass. Gary Burgess was then arrested for (and later charged with) driving under the influence of alcohol ("DUI") and aggravated assault on a law enforcement officer. Burgess was transported to the Overland Park Police Station where he took an intoxilyzer test. His blood alcohol content registered .101. All criminal charges against Gary Burgess relating to this incident were eventually dismissed.

Plaintiffs filed a notice of claim with the City of Overland Park pursuant to K.S.A. 12–105b(d) on August 28, 1990. Plaintiffs' attorney, Thomas Foster, met with Michael R. Santos, Assistant City Attorney, on September 19, 1990. In that meeting Santos told Foster that the City specifically rejected plaintiffs' claims but that a counteroffer might well be forthcoming. Foster advised Santos that plaintiffs would be filing suit in the near future but would delay service on the City pending the counteroffer. Santos sent a letter dated October 18, 1990, to plaintiffs which stated, "we find no basis for compensation of this claim." However, the letter also contained a "one-time" offer to settle the case for $9,500 in return for a complete release by both plaintiffs.

Plaintiffs filed an original petition in Johnson County District Court on October 12, 1990. In that petition, plaintiff Gary Burgess asserted claims for false arrest and imprisonment, malicious prosecution, and intentional damage to personal property. Marilee Burgess also asserted claims for battery and negligent use of a weapon. On February 5, 1992, plaintiffs filed an amended petition alleging civil rights violations for false arrest and excessive force pursuant to 42 U.S.C. § 1983. Defendants removed the case to this court on March 3, 1992.

## II. *Discussion*

### A. *Summary Judgment Standards:*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Clemmons v. Bohannon*, 956 F.2d 1523, 1525 (10th Cir.1992) (quoting Fed.R.Civ.P. 56(c)). An issue is "material" only when the controversy is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

"[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, the mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

When the nonmoving party makes a showing of contested facts, the court must consider factual inferences tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

### B. *The Statute of Limitations Issues:*

■ Defendants seek summary judgment on plaintiffs' state law claims for failure to comply with K.S.A. 12–105b(d). Section 12–105b(d) requires a party with a claim against a municipality "which could give rise to an action brought under the Kansas tort claims act" to file a written notice of claim with the municipality as a prerequisite to commencing a legal action against the municipality. "Once notice of a claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first." *Id.*

The crux of defendants' argument is that Santos did not, on behalf of the City, deny the plaintiff's claim during the September 19, 1990, meeting. Defendants do not controvert plaintiffs' attorney Foster's account of what was said at the meeting. Rather, they contend that Santos's statements were merely "non-binding indications that negotiations were possible and in fact probable." Defendants thus conclude that Santos's statements were not a denial of plaintiff's claim under section 12–105b(d).

We disagree. K.S.A. 12–105b(d) merely requires a denial—in whole or in part—prior to filing suit. Santos's statement that the City was specifically rejecting plaintiffs' claims was such a denial notwithstanding his discussion of a possible counteroffer in the future. A counteroffer would certainly have at least amounted to a denial of part of plaintiffs' claims.[1]

■ Defendant City[2] seeks summary judgment on plaintiffs' section 1983 claims claiming they are barred by the two-year statute of limitations. *See, Hamilton v. City of Overland Park,* 730 F.2d 613 (10th Cir. 1984), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985) (The statute of limitations for § 1983 claims is two years.) Defendants contend that plaintiffs' amended petition could not relate back to the original petition because the original petition was invalid for failure to comply with the requirements of K.S.A. 12–105b(d). We have already decided that plaintiffs' original petition complied with section 12–105b(d). Thus, the original petition was valid and the amendment related back under Federal Rule of Civil Procedure 15(c). Accordingly, defendants' motion for summary judgment on the section 1983 claims on statute of limitations grounds will be denied.

### C. *The State Law Claims*

Plaintiff Gary Burgess alleges state law violations in Count I for intentional damage to property, in Count III for false arrest, false imprisonment and malicious prosecution, and in Count IV for excessive force against his automobile. Plaintiff Marilee Burgess alleges state law violations in Count II for personal injury and in Count IV for excessive force against her person.

In Kansas, actions against a governmental entity or any employee of such entity acting within the scope of employment are governed by The Kansas Tort Claims Act ("KTCA"), K.S.A. 75–6101–6120 (1989 & Supp.1992). Pursuant to the KCTA, defendants claim that they are insulated from liability on plaintiffs' state law claims by K.S.A. 75–6104(c) and (e). We note that the KTCA is an "open-ended" act; liability is to be the rule while immunity

---

1. Settlement offers occur for reasons other than an admission of liability as Santos' October 18, 1990 letter shows: "Notwithstanding our belief that your client's claims are without merit, we would like to avoid needless and prolonged litigation ... we are willing to make a one-time offer of settlement in the amount of $9,500.00."

2. West may not raise § 12–105b(d) as a basis for dismissal of plaintiffs' claims against him because § 12–105b(d) is limited to actions *against a municipality.* Contrary to West's assertion, we do not believe that a claim against an employee of a municipality equates to a claim against the municipality under § 12–105b(d) regardless of any obligations the municipality may have to the employee.

is to be the exception. *Kansas State Bk. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 599 (1991). In addition, defendants bear the burden of establishing immunity under section 75–6104. *Id.*, 819 P.2d at 600.

Defendants claim that West was performing a "discretionary function" in clearing the area and directing traffic. K.S.A. 75–6104(e) provides that governmental entities and their employees who are acting within the scope of employment are exempt from liability for "any claim based upon the exercise or performance ... [of] a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." *Id.*

The term "discretionary function" is not defined in the statute. However, the Kansas Supreme Court most recently discussed the discretionary function exception in *Kansas State Bk.* 819 P.2d at 599–602.[3] The critical inquiry is "the nature and the quality of the discretion exercised rather than the status of the employee." *Id.* The mere exercise of judgment is not the touchstone of the exception. Rather, "a discretionary function must involve some element of policy formulation." *Id.*, at 600 (citing *Downs v. United States*, 522 F.2d 990, 995 (6th Cir.1975) (considering the Federal Tort Claims Act)). Under this test, we fail to see how West's actions in this case involved any element of policy formulation—West was merely exercising judgment.

However, our analysis cannot stop there. Both this court and the Kansas Supreme Court had previously held that " '[d]iscretion' has been defined as 'the power and the privilege to act unhampered by legal rule.' " *Allen v. Board of Comm'rs of Wyandotte*, 773 F.Supp. 1442, 1454 (D.Kan.1991) (quoting *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272, 277 (1988)); *see also Robertson v. City of Topeka*, 231 Kan. 358,

644 P.2d 458, 462–63 (1982) ("The police officers were not required to exercise judgment at their peril.").

We believe that the Kansas Supreme Court would resolve this apparent inconsistency as they did in *Kansas State Bank* by resorting to an analysis of whether the act in question was truly discretionary or merely ministerial. Under section 75–6104(e), once a stated policy is in place to govern conduct, governmental employees are no longer exercising discretion, but are merely performing a ministerial function. *Kansas State Bank*, 819 P.2d at 600 ("It is clear that failure to follow mandatory guidelines is not subject to immunity under the discretionary function exception to the KTCA."). The existence of a written policy governing the use of force by police officers, Administrative Division Bulletin # 100–71 (January 31, 1987) entitled "Use of Force," is undisputed in this case. Reserve police officers were required to follow the policy. The policy contained the following rule: "Flashlights are not approved defensive instruments and are not to be used as such except when absolutely necessary for protection of a person."

Plaintiffs contend that Officer West violated this rule when he used his flashlight to strike the car and Marilee Burgess. Therefore, they claim that defendants are not immune from liability under the discretionary function exception because West was performing a ministerial function in violation of stated police policy. *See Kansas State Bank*, 819 P.2d at 600. We disagree. Whether West violated the policy depends on whether his actions were "absolutely necessary for the protection of a person." That question is disputed by the parties. Thus, a fact question remains and summary judgment on the discretionary function defense will be denied as to the intentional damage to property and personal injury claims.[4]

---

3. The court only considered the pre–1987 version of the statute which did not include the language "regardless of the level of discretion involved." *Kansas State Bank*, 819 P.2d at 599.

4. The discretionary function exception will protect defendants on the false arrest and imprison-

ment claims, however. *See, Hinton v. City of Elwood*, No. 90–2342–0, 1991 WL 205035, 1991 U.S.Dist. LEXIS 14290 (D.Kan. Sept. 9, 1991); *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093, 1099–1100 (1986) (decision about whether to arrest is protected if in conformance with guidelines for arrest).

■ In addition, recent Kansas cases indicate that the section 75–6104 exceptions to liability only protect negligent conduct, but not willful or wanton acts by governmental employees. "Only negligent or wrongful acts or omissions of employees are excepted from liability by 75–6104, while acts or omissions involving more than lack of ordinary care and diligence are not." *Hopkins v. State,* 237 Kan. 601, 702 P.2d 311, 318–19 (1985). In *Hopkins,* the court held that summary judgment was properly denied because there was a genuine issue about whether the police officers' actions went beyond mere negligence to malicious and wanton. *Id.,* 702 P.2d at 319. The court finds that plaintiffs have properly raised a question of fact about whether West's actions in striking the car and Marilee Burgess were willful or wanton. Thus, summary judgment will be denied.

■ Defendants also claim immunity under K.S.A. 75–6104(c), which exempts governmental entities and their employees acting within the scope of employment from liability for "enforcement of or failure to enforce a law, whether valid of invalid." However, in *Lantz v. City of Lawrence,* the court held that summary judgment was improper where material questions of fact remained about whether the defendants' were actually enforcing a local ordinance when they cut down plaintiff's trees. *Lantz,* 657 P.2d 539, 543 (1983). Thus, section 75–6104 provides no immunity on Gary Burgess's claim for intentional damage to property and Marilee Burgess's claim for personal injury. West was not enforcing a law by striking the car or Marilee Burgess. Furthermore, even if he was, plaintiffs have raised a genuine question of fact about whether West's actions were intentional or reckless. *See Hopkins,* 702 P.2d at 318–19.

However, with regard to plaintiff Gary Burgess's claims for false arrest and imprisonment, we hold that West had probable cause and was thus was enforcing K.S.A. 8–1567(a) when he arrested and charged Gary Burgess with driving while intoxicated.

Therefore, defendants are entitled to immunity from liability on those claims under section 75–6104(c).[5]

### 1. *Malicious Prosecution Claim*

■ The court also finds that defendants are entitled to summary judgment on plaintiff Gary Burgess's claim for malicious prosecution on the DUI charge. To maintain an action for malicious prosecution, Burgess must show that the defendants acted without probable cause and with malice. *Tappen v. Ager,* 599 F.2d 376, 378 (10th Cir.1979); *Sampson v. Hunt,* 233 Kan. 572, 665 P.2d 743, 753 (1983). We have already concluded that defendants had probable cause on the DUI charge. Plaintiff offers no evidence to raise a factual question on the element of malice. Thus, summary judgment on malicious prosecution for DUI will be granted.

However, defendants are not entitled to summary judgment on Burgess's claim for malicious prosecution for the charge of aggravated assault on a law enforcement officer. Defendants are not immune from liability under section 75–6104(c) unless West had probable cause to arrest. Aggravated assault on a law enforcement officer involves willfully or intentionally assaulting a properly identified law enforcement officer either with a deadly weapon (K.S.A. 21–3410(a)) or with the intent to commit a felony (K.S.A. 21–3410(c)). K.S.A. 21–3411. West claims that he feared that Burgess would hit him with the car and that he had to jump out of the path of Burgess's vehicle. However, plaintiffs have offered evidence that West simply stepped out of the path of Gary Burgess's vehicle and that Burgess did not appear to be trying to run Officer West down. Thus, plaintiffs have raised a genuine question of fact about whether West had probable cause to arrest and charge Gary Burgess with aggravated assault. Accordingly, summary judgment will be denied on Gary Burgess's claim for malicious prosecution for assault.

### 2. *Excessive Force Claim*

■ To the extent Gary Burgess raises a state law claim for excessive force, summary

---

**5.** We need not reach the question of whether West had probable cause to arrest on the assault charge with regard to the false arrest and imprisonment claims. West clearly had probable cause on the DUI charge. Therefore, defendants are immune from liability for the arrest and subsequent imprisonment of plaintiff Gary Burgess.

judgment will be granted. As discussed below, Gary Burgess admitted that no force was applied to his person. Rather, he claims that West used excessive force in striking his car. We know of no cause of action for excessive force to property in Kansas. Accordingly, even viewing the facts in the light most favorable to plaintiff, Gary Burgess fails to state a claim for excessive force.

### D. § 1983 Claims

Much has been written about the doctrine of qualified immunity which insulates government officials from liability when performing official duties. See, e.g., Horwitz v. State Bd. of Medical Examiners, 822 F.2d 1508, 1512 (10th Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); Allen v. Board of Comm'rs of Wyandotte, 773 F.Supp. 1442, 1451 (D.Kan.1991). To summarize, public officials enjoy qualified immunity from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Pleasant v. Lovell, 876 F.2d 787, 794 (10th Cir.1989).

Summary judgment analysis differs somewhat here from other contexts—the burden on a plaintiff seeking to withstand summary judgment on the qualified immunity defense is more stringent. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir.1988). Once the defendant has successfully raised the qualified immunity defense, plaintiff must come "forward with facts or allegations to show both that the defendants' alleged conduct violated the law and that the law was clearly established when the violation occurred." Id. "The key to this inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken." Laidley v. McClain, 914 F.2d 1386, 1394 (10th Cir.1990). The "objective reasonableness" standard was adopted to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.

A claim of qualified immunity presents a question of law about whether the officer's actions were objectively reasonable. Dixon v. Richer, 922 F.2d 1456, 1460 (10th Cir. 1991). The court may not avoid the question by "framing it as a factual issue." Workman v. Jordan, 958 F.2d 332, 336 (10th Cir.1992); Pueblo Neighborhood Health Ctrs., 847 F.2d at 646. Qualified immunity is "an immunity from suit rather than a mere defense to liability." Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir.1990). Thus, a defendant is spared the burden of going forward "unless and until the plaintiff is able to meet the burden of establishing that the defendant's alleged actions violated clearly established law." Gallegos v. City of Denver, 984 F.2d 358, 362 (10th Cir.1993).

Once plaintiff has met this burden, the defendant must demonstrate that no material issues of fact remain as to whether his actions were objectively reasonable in light of the law and the information he possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity. See Martin v. Board of County Comm'rs, 909 F.2d 402, 405 (10th Cir.1990).

With respect to plaintiff Gary Burgess's false arrest and imprisonment claims, the court finds that Burgess has failed to show that West violated clearly established law or that there are factual disputes relevant to the reasonableness of West's arrest of Burgess. Clearly, the constitutional validity of the arrest depends upon whether, at the moment the arrest was made, the arresting officer had probable cause to make the arrest. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964). As a matter of law, probable cause exists when, at the moment of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information are sufficient to warrant a prudent person in believing that plaintiff had committed or was committing an offense. Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir.1985) (citations omitted).

**1528**

■ We disagree with plaintiff that he was placed under "arrest" when West struck his car. Burgess was not restrained until he was actually placed under arrest. On the basis of the uncontroverted evidence now before the court, the court concludes that reasonable officers in West's position would have believed that Burgess was driving under the influence of alcohol. After West smelled alcohol on Gary Burgess's breath and Burgess failed the field sobriety test, West had probable cause to arrest Burgess for driving under the influence of alcohol in violation of K.S.A. 8–1567(a)(3). Similarly, once Burgess's blood alcohol content registered over .10, West had probable cause to charge Burgess with driving under the influence.[6] The court finds that no reasonable jury could find in Burgess's favor on his false arrest and imprisonment claims under section 1983 because, as a matter of law, West had probable cause to arrest Gary Burgess. Accordingly, defendants are entitled to summary judgment as a matter of law on these claims.

The court next turns to plaintiffs' claims for excessive force. At the time of this incident, it was clearly established law that law enforcement officers were required to carry out searches and seizures in an objectively reasonable manner. *Dixon v. Richer*, 922 F.2d at 1461 (citations omitted). Thus, to overcome West's assertion of qualified immunity, plaintiffs bear the burden of showing that West's use of the flashlight amounted to excessive force and was not objectively reasonable.

■ Reviewing the evidence with respect to Gary Burgess's claim in the light most favorable to Burgess, the court finds that West's actions against Gary Burgess did not amount to excessive force. Gary Burgess has admitted that, beyond being handcuffed, he was not physically abused or mistreated in any way by West or any of the other police officers. Gary Burgess offers no evidence that he suffered any physical injury whatsoever. The Tenth Circuit in *Hannula v. City of Lakewood* noted that plaintiff's injury was minimal in holding that plaintiff failed to show that defendant violated a clearly established constitutional right. *Hannula,* 907 F.2d at 129 (if the injury was minimal, it is likely that the force was minimal).

Gary Burgess contends that West used excessive force to effect his arrest when he struck the car and Marilee Burgess with the flashlight. In support, plaintiffs rely heavily on *Martin v. Board of County Comm'rs,* 909 F.2d at 406–07. Under the extreme facts presented by *Martin,* the Tenth Circuit held that physical contact was not required to "demonstrate the unreasonableness of the force used to effect a particular seizure." Even so, section 1983 only protects against "state intrusions into the realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as to literally shock the conscience of the court." *Gumz v. Morrissette,* 772 F.2d 1395, 1400 (7th Cir. 1985) (cited in *Martin,* 909 F.2d at 406) (a threat of deadly force without physical contact was redressable under § 1983 action). We, therefore, hold that Gary Burgess does not present a section 1983 claim just because he witnessed West hit his mother. *See, Archuleta v. McShan,* 897 F.2d 495, 500 (10th Cir.1990).

Similarly, West's act of striking Burgess's car was not so "brutal, demeaning, [or] harmful as to literally shock the conscience" of this court. Accordingly, West's action against the car does not rise to the level of a constitutional violation for excessive force. The damage to the car may give rise to some other cause of action, but it is not actionable under section 1983. *See Brierley v. Schoenfeld,* 781 F.2d 838, 842 (10th Cir.1986) ("[N]ot all force by police officers constitutes a § 1983 action and not all state torts are constitutional violations to be vindicated pursuant to § 1983.").

Even if we were to hold that West's striking of Burgess's car was excessive force actionable under section 1983, summary judgment would be appropriate because West would be entitled to qualified immunity. Plaintiff has failed to bring forward any legal authority in existence at the time of the alleged violation, which would have informed

---

6. The legal blood alcohol limit in Kansas is .10.

Kan.Stat.Ann. § 8–1567(a)(1), (2) (1991).

a reasonable official that striking plaintiff's car constituted excessive force in violation of plaintiff's constitutional rights. We know of no cases holding that excessive force against property rises to the level of a constitutional violation.[7]

To the extent that Gary Burgess is claiming deprivation of property in violation of a constitutional right to property under the fourteenth amendment, our conclusion would be the same. Therefore, defendant West's motion for summary judgment on Gary Burgess's section 1983 claim for excessive force will be granted.

■ West's actions with respect to Marilee Burgess are more troubling. West claims that he did not know that the plaintiffs' car was a convertible and that he accidentally and unintentionally struck Marilee Burgess with his flashlight as he attempted to slow or stop the vehicle. Marilee Burgess was not arrested. Thus, she has asserted a due process claim for deprivation of liberty due to West's use of excessive force against her.

To maintain such a due process action under section 1983, Marilee Burgess must show that she was the deliberate object of state action in the form of an intentional act or deliberate indifference which caused her injury. *Archuleta,* 897 F.2d at 499. Marilee Burgess claims that she sustained injuries to her head and neck requiring medical treatment in the amount of $1,474.86. She must also, however, offer evidence that Officer West intended to harm her or acted recklessly in causing her injuries. *See id.* at 497–500. Plaintiff has submitted sworn statements [8] of several fact witnesses to controvert West's contention that he was not acting recklessly when he accidentally struck Marilee Burgess. Therefore, summary judgment on Marilee Burgess's section 1983 claim against defendant West will be denied.

### E. *Liability of the City on the § 1983 Claims*

■ The City is not liable on Gary Burgess's section 1983 claims. A municipality cannot be held liable under the doctrine of respondeat superior for section 1983 violations unless a City policy or custom was "the moving force [behind] the constitutional violation." *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiffs allege that the defendant City is liable under section 1983 for failure to supervise Officer West. Liability for failure to supervise is only proper where the failure to supervise amounts to "deliberate indifference to the rights of persons with whom the [employees] come in contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

The court finds that plaintiffs have failed to present sufficient evidence to create a triable issue of fact with respect to the City's section 1983 liability. The record is notably void of any evidence of other similar incidents involving Officer West or any other reserve officer. As the Supreme Court in *City of Oklahoma City v. Tuttle* stated, "[c]onsiderably more proof than a single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985) (footnotes omitted). *See also Rodriguez v. Avita,* 871 F.2d 552, 555 (5th Cir.), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989) (dismissing claim of municipal § 1983 liability where complaint alleged only a single incident of arguably excessive force applied by one officer); *Ricciuti v. New York City Transit Authority,* 754 F.Supp. 980, 983 (S.D.N.Y.1990) (rejecting plaintiff's assertion that a municipal defen-

---

7. The only case even alluding to a § 1983 action for damage to property is *Erwin v. County of Manitowoc* in which the jury determined that a police officer had acted unreasonably in shooting the plaintiffs' dog while executing a search warrant of plaintiffs' house. 872 F.2d 1292, 1294 (7th Cir.1989).

8. These statements may be properly considered by the court as evidence in support of plaintiff's motion in opposition of summary judgment. 28 U.S.C. § 1746; D.Kan. Rule 206(c).

dant's deliberate indifference may be inferred from a single incident alleged in the complaint); *Dempsey v. Town of Brighton*, 749 F.Supp. 1215, 1229 (W.D.N.Y.1990) (single incident is generally insufficient to raise an inference of a custom or policy).

Construing the evidence in the light most favorable to plaintiffs, we find that plaintiffs have at best demonstrated that the City failed to supervise Officer West on the night in question. Such evidence, in the court's view, is insufficient to allow reasonable finders of fact to conclude that the City failed to supervise because of deliberate indifference to the rights of its citizens. *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205. Thus, defendant City is entitled to summary judgment as a matter of law on plaintiffs' section 1983 claims.

### III. *Conclusion*

The following claims remain for trial: Gary Burgess's state law claim against both defendants for intentional damage to property; Gary Burgess's state law claim against both defendants for malicious prosecution on the assault charge; Marilee Burgess's state law claim for personal injury against both defendants; Marilee Burgess's state law claim for excessive force against both defendants; and Marilee Burgess's section 1983 claim against defendant West.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 8) is denied.

IT IS FURTHER ORDERED that defendant City of Overland Park's motion for summary judgment against plaintiff Gary Burgess (Doc. # 31) is granted as to Counts III and V and denied as to Counts I and IV.

IT IS FURTHER ORDERED that defendant West's motion for summary judgment against plaintiff Gary Burgess (Doc. # 33) is granted as to Counts III and V and denied as to Counts I and IV.

IT IS FURTHER ORDERED that defendant City of Overland Park's motion for summary judgment against plaintiff Marilee Burgess on Counts II, IV, and V (Doc. # 37) is denied.

IT IS FURTHER ORDERED that defendant West's motion for summary judgment against plaintiff Marilee Burgess on Counts II, IV, and V (Doc. # 35) is denied.