(268 P.3d 1248)
No. 105,033

ADELINA GARCIA, *Appellant*, v. MICHAEL ANDERSON, CHARLES DOULL, and GARDEN CITY POLICE DEPARTMENT, *Appellees*.

Opinion filed January 20, 2012.

*Jaskamal P. Dhillon and Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*Russel B. Prophet*, of Hampton & Royce, L.C., of Salina, for appellees.

Before HILL, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Adelina Garcia appeals the district court's dismissal of her petition alleging racial profiling pursuant to K.S.A. 22-4611 against the appellees, Officers Michael Anderson and Charles Doull and the Garden City Police Department. The district court dismissed Garcia's petition based on her failure to comply with the notice provisions of K.S.A. 2010 Supp. 12-105b(d) for a claim made against a municipality subject to the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq*. Garcia argues the notice provisions of the K.S.A. 2010 Supp. 21-105b do not apply to her racial profiling claim. Alternatively, Garcia contends she substantially complied with the notice requirements. We affirm.

On March 11, 2007, at approximately 5:30 p.m., Officers Anderson and Doull stopped Garcia's vehicle for a defective brake light. Garcia was accompanied by her 12-year-old daughter. Garcia presented her driver's license and registration. When Officer Anderson called in Garcia's driver's license number to dispatch, he

gave the wrong number—the result of which caused a very unfortunate turn of events.

Garcia testified she was ordered out of her car and searched in an abusive manner. She said the officers pulled, shoved, and verbally assaulted and abused her with the intent and purpose of humiliating and embarrassing her to the public and in front of her young daughter. Both officers were male and one of them aggressively performed a pat-down search. Garcia alleges that the officers belligerently accused her of lying about her identity, having open arrest warrants for driving under the influence and immigration related charges, and a criminal record in Emporia. She stated they also threatened to call the Immigration and Naturalization Service to initiate deportation proceedings. Garcia stated she was forcefully and tightly handcuffed and put into the back of the patrol car.

Garcia stated that after a third officer arrived, the officers determined there had been a mistake about her driver's license and criminal record. Garcia said the officers let her go, offered no apology, and ordered her to walk to her car. The officers sped off without issuing any citation to her in connection with the stop. Garcia alleged that she was traumatized, injured, and angered by the incident.

The officers state that the report on Garcia's license was that the driver had a revoked license, an outstanding warrant, and an Immigration and Customs Enforcement detainer. The officers searched and arrested Garcia, but then discovered their error after rerunning Garcia's license number. They contend they made an effort to apologize to Garcia and explain the mistake. They immediately released her from custody. The officers claim they acted in a professional and cordial manner throughout the entire ordeal.

Garcia filed a complaint with the Kansas Human Rights Commission (KHRC). The KHRC conducted an investigation into the incident and issued a probable cause finding that a racial profiling violation had occurred. The appellees state that the final recommendations from the KHRC were for the police department to adopt a policy of requiring written arrest reports, even in situations resulting from mistaken arrests, and that supported the police department's policy of searching an arrestee before placing them in

a patrol vehicle, but suggested a written report be completed in situations where a search is completed of an arrestee of the opposite gender. The appellees argue there was no recommendation of discipline for any officer involved in the incident and no determination was made that Garcia's race or ethnicity was a factor in her arrest.

On March 10, 2010, Garcia filed a petition in the district court alleging profiling violations and a cause of action pursuant to K.S.A. 22-4611. She gave no written notice of her claim to the Clerk of Garden City. She alleged she was traumatized, injured, and angered by the actions of the police officers and requested damages in an amount exceeding $75,000 for compensatory and punitive damages, plus attorney fees and costs.

The appellees answered Garcia's petition, raising several affirmative defenses including her failure to comply with the notice provisions under K.S.A. 12-105b. The appellees filed a motion to dismiss based on 12-105b. In response, Garcia raised the same arguments that are now presented on appeal, namely that 12-105b does not apply or, alternatively, there was substantial compliance. After a hearing on the matter, the district court held that although the investigation by the KHRC provided notice of many of the provisions under 12-105b(d), Garcia did not substantially comply with 12-105b(d) because she never provided a statement of the amount of her monetary damages. The court found that Garcia's claim was one which could give rise to an action under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq*. The court held she was required to give written notice of the claim to the Clerk of Garden City pursuant to K.S.A. 12-105b(d) unless K.S.A. 22-4611 could be construed to eliminate the statutorily required notice. Answering its question in the negative, the district court concluded:

"Because K.S.A. 22-4611 simply establishes a tort action under the KTCA without specifically eliminating the K.S.A. 12-105b notice requirement for such an action, K.S.A. 22-4611 must be construed in harmony with K.S.A. 12-105b to establish a civil cause of action to recover damages for racial profiling under the Kansas tort claims act which may be commenced after denial of the claim properly set out in the appropriate written notice as provided in K.S.A. 12-105b."

Garcia appeals, and we affirm.

First, Garcia argues that the notice provisions of K.S.A. 2010 Supp. 12-105b(d) do not apply to a petition alleging racial profiling by a law enforcement officer under K.S.A. 22-4611. She does not cite any cases in support of her argument. Instead, she raises a statutory interpretation argument that K.S.A. 22-4611 establishes a prerequisite to filing a lawsuit that is complete in and of itself.

This issue requires interpretation of K.S.A. 22-4611 and K.S.A. 2010 Supp. 12-105b. An issue of statutory interpretation is a question of law over which appellate courts have unlimited review. *Pruter v. Larned State Hospital,* 271 Kan. 865, 868, 26 P.3d 666 (2001).

K.S.A. 22-4611 provides:

"(a) Any person who believes such person has been subjected to racial profiling by a law enforcement officer or agency may file a complaint with the law enforcement agency. The complainant may also file a complaint with the Kansas human rights commission. The commission shall review and, if necessary, investigate the complaint. The commission's designee shall consult with the head of the law enforcement agency before making final recommendations regarding discipline of any law enforcement officer or other disposition of the complaint.

"(b) Upon disposition of a complaint as provided for in subsection (a) *the complainant shall have a civil cause of action in the district court against the law enforcement officer or law enforcement agency, or both,* and shall be entitled to recover damages if it is determined by the court that such persons or agency engaged in racial profiling. The court may allow the prevailing party reasonable attorney fees and court costs." (Emphasis added.)

Garcia contends the appellees are reading additional requirements into K.S.A. 22-4611 by requiring compliance with the notice requirements of K.S.A. 2010 Supp. 12-105b(d) since no such language is expressed in K.S.A. 22-4611.

K.S.A. 2010 Supp. 12-105b(d) provides in relevant part: "Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action."

The notice requirements in K.S.A. 2010 Supp. 12-105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality. See *Smith v. Kennedy,* 26 Kan. App. 2d 351, Syl. ¶ 1, 985 P.2d 715, *rev. denied* 268 Kan. 848 (1999); *Tucking*

*v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, 444-45, 796 P.2d 1055, *rev. denied* 246 Kan. 770 (1990).

Garcia argues that if the legislature intended the notice requirements of 12-105b to apply to her profiling claim, it could have inserted such language in K.S.A. 22-4611. She suggests that for such requirements to be in the statute, the appellees need to provide some indication that the legislative purpose of K.S.A. 22-4611 was to stem the tide of frivolous petitions filed against law enforcement officials and agencies that might clog up the courts.

Garcia argues this is a situation where the specific statute—K.S.A. 22-4611, racial profiling—controls over the general statute—K.S.A. 2010 Supp. 12-105b. While it is an accurate statement of the law that "the more specific statute must control over a more general statute," see *State v. Martinez*, 290 Kan. 992, 1001, 236 P.3d 481 (2010) (citing *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 [2007], *cert. denied* 555 U.S. 937 [2008]), that rule has no application in this context. The rule applies where a general statute is in conflict with a specific statute dealing with the same subject. We are not convinced there are any conflicting statutes in this case.

"It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or over other statutes which deal only incidentally with the same question, or which might be construed to relate to it. Where there is a conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. [Citations omitted.]" *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 432, 601 P.2d 1100 (1979).

Here there is no such conflict as the racial profiling statutes concern a cause of action for racial profiling and the K.S.A. 2010 Supp. 12-105b(d) notice requirements concern the procedural hurdles necessary for filing a cause of action against a municipality. K.S.A. 22-4611 does not provide any express exemption from the notice provisions of 12-105b. Garcia's argument that 12-105b does not apply because K.S.A. 22-4611 does not address 12-105b is the antithesis of the theory that 12-105b applies to all applicable claims unless exempted by the legislature. There is no conflict between the two statutes; therefore, it is improper to use the more-specific-statute rule of construction. See, *e.g., In re Tax Exemption Appli-*

*cation of Mental Health Ass'n of the Heartland*, 289 Kan. 1209, 1218, 221 P.3d 580 (2009).

The appellees cite a line of cases involving violations of the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 *et seq.* In *Sandlin v. Roche Laboratories, Inc.*, 268 Kan. 79, 991 P.2d 883 (1999), the court held that a fired employee, with an administrative proceeding pending before the KHRC in which a probable cause finding of a violation of the KAAD had been issued, could not bring a separate action in the district court without completely exhausting his administrative remedies by failing to timely seek reconsideration of the KHRC's order of dismissal. 268 Kan. at 86-88. *Sandlin* does not address the notice requirements of K.S.A. 12-105b(d).

The appellees also cite *Miller v. Brungardt*, 916 F. Supp. 1096 (D. Kan. 1996), where Miller filed suit alleging sexual harassment and retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the KAAD, as well as intentional infliction of emotional distress under Kansas common law. The *Miller* court stated that K.S.A. 12-105b(d)'s notice requirements were a condition precedent to Miller filing a claim of intentional infliction of emotional distress against Brungardt and Flores if their actions occurred within the scope of their employment. 916 F. Supp. at 1101.

The *Miller* court found that comments made by Brungardt, the school's vice-principal, were sexually inappropriate and were not within the scope of his employment. " ' "[S]exual harassment . . . is not within the job description of any supervisor or any other worker in any reputable business.' " *Ulrich v. K-Mart Corp.*, 858 F. Supp. 1087, 1092 (D. Kan. 1994) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417-18 [10th Cir. 1987]). Hence, the Kansas notice requirement [did] not attach to the plaintiff's intentional infliction of emotional distress claim against Brungardt." 916 F. Supp. at 1101. However, the claims against Flores, the superintendent, where he verbally reprimanded Miller for filing a sexual harassment grievance against Brungardt, inadequately investigated her grievance, and failed to take proper remedial action, were within the scope of a superintendent's employment. Consequently, Miller was required to comply with K.S.A. 12-105b(d)'s notice requirements, which she failed to do, and the claim for intentional

infliction of emotional distress claim against Flores was dismissed. 916 F. Supp. 1101.

Garcia raises state law claims against the police department and the officers acting within the scope of their employment. We agree with the district court that Garcia's claims could give rise to a number of actions whereby the appellees could be liable in Kansas, namely assault, battery, false imprisonment, invasion of privacy, and damages for racial profiling. All of these types of claims are covered by K.S.A. 2010 Supp. 12-105b(d)'s notice requirement. See *Knorp v. Albert*, 29 Kan. App. 2d 509, 513, 28 P.3d 1024, *rev. denied* 272 Kan. 1418 (2001) (holding that notice statute "applies to both municipal entities and employees of municipal entities acting within the scope of their employment"); *King v. Pimentel*, 20 Kan. App. 2d 579, 589-90, 890 P.2d 1217 (1995) (explaining that 12-105b(d)'s notice requirement applies to municipal employees acting within the scope of their employment "[b]ecause a municipality faces significant liability" whether an action is "brought against it [or] against its employees"). Because Garcia failed to provide the City with proper notice of these claims pursuant to K.S.A. 2010 Supp. 12-105b, the motion to dismiss was properly granted.

We pause to comment that the Kansas Legislature may place reasonable restrictions on the right to sue municipalities, and the requirement that claimants give notice of their claim pursuant to 12-105b(d) is a reasonable restriction that applies equally to all persons wishing to sue the government. "The right to sue the government in Oklahoma is a right granted by statute. As such, the legislature may place reasonable restrictions on that right. The requirement that claimants give notice of their claim is a reasonable restriction that applies equally to all persons wishing to sue the government." *Day v. Memorial Hosp. of Guymon*, 844 F.2d 728, 732 (10th Cir. 1988); see also *Hibbs v. City of Wichita*, 176 Kan. 529, 532-33, 271 P.2d 791 (1954) ("This court has always recognized the power of the legislature to enact a statute establishing conditions precedent to the maintenance of an action against a city for damages to person or property and long ago, in construing 12-105, . . . deter-

mined that its provisions established conditions precedent to the bringing of such an action which must be pleaded . . . .").

Accordingly, we hold that the district court correctly dismissed Garcia's petition for lack of compliance with K.S.A. 2010 Supp. 12-105b(d).

Next, Garcia argues that if 12-105b(d) applies, she substantially complied with the notice provisions of the statute and the district court erred in holding to the contrary. We disagree.

Determining whether Garcia substantially complied with 12-105b(d) necessitates both a factual and legal standard of review. An appellate court reviews the trial court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. 288 Kan. at 65. An appellate court has unlimited review of conclusions of law. *American Special Risk Management Corp. v. Cahow*, 286 Kan. 1134, 1141, 192 P.3d 614 (2008).

With regard to the substantive requirements of any written notice of a claim under the statute, K.S.A. 2010 Supp. 12-105b(d) provides in relevant part:

"(d) . . . The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate

an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action."

Garcia maintains there is really no argument that the appellees were sufficiently notified of the required elements in K.S.A. 12-105b(d)(1), (2), (3), and (4) by virtue of the investigation by the KHRC. The appellees do not challenge this claim. However, Garcia argues she substantially complied with the statutory notice requirements of her alleged damages by virtue of the fact that the appellees told her that mediation of her claims was out of the question and the appellees would aggressively defend the allegations. She contends the investigation by the KHRC gave the appellees the "opportunity to ascertain the character and extent of the injury sustained" and, thus, the monetary component of 12-105b(d) notice requirements did not need to be met with specificity.

Garcia cites *Burgess v. West*, 817 F. Supp. 1520 (D. Kan. 1993), for her argument that we should consider the appellees' statements that mediation of Garcia's claims was out of the question and they would aggressively defend the allegations to be a denial of her claims under K.S.A. 2010 Supp. 12-105b. In *Burgess*, the question was whether the plaintiff's written notice, which was in complete compliance with 12-105b, was denied in whole or in part. The issues centered around the commencement of the running of the statute of limitations based on when the plaintiff's written claim was denied. Here, Garcia argues that based on *Burgess*, she was essentially advised it would be fruitless to attempt to negotiate damages and that equity requires that the appellees not benefit from the consequence that a specific settlement offer was not then made. We disagree.

Several cases have addressed the insufficiency of the damage element of notice under 12-105b(d). In *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App. 2d 379, 988 P.2d 263 (1999), the plaintiff was in custody and in a sheriff's patrol car when the officer driving the car backed into another vehicle. The plaintiff filed suit against Shawnee County alleging negligence and attempt-

ing to recover damages, but the district court dismissed the suit due to his failure to comply with 12-105b. On appeal, we initially noted that the plaintiff served the notice on the office of the Shawnee County Counselor and not "the clerk or governing body of the municipality," as the statute required. 26 Kan. App. 2d at 381-83. Although service was incorrect, the court cited additional flaws in the notice:

"For one, [the notice] varied factually in its claim of damages. In the claim filed, plaintiff said that he was seeking damages of $15,000 for 'pain and suffering, disability, present and future medical, disfigurement; as well as, wage loss.' The petition filed, on the other hand, sought damages in excess of $50,000.

"The failure to specify the same amount of damages as filed in his claim and the failure to conform his petition to the matters set forth in the claim is an additional reason why the claim did not substantially comply with the statute. K.S.A. 1998 Supp. 12-105b(d)(5) requires 'a statement of the amount of monetary damages that is being requested.' Plaintiff varied that statement from the claim to the petition and it renders his notice insufficient, and we hold it did not substantially comply with the provisions of the statute." 26 Kan. App. 2d at 383.

In *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 639, 205 P.3d 1265 (2009), there was a collision between a freight train and a truck. After settling a lawsuit against them filed by the train company, the truck driver and his employer filed suit against Barber County for negligence and implied indemnity due to "an alleged failure to construct and maintain a safe grade crossing." The district court granted the appellees' motion to dismiss, finding, among other things, that the notice filed did not substantially comply with 12-105b(d).

After analyzing the notice filed, the *Dodge City Implement* court found that the notice did not substantially comply with the statutory requirements because it identified an incorrect claimant; did not identify the ultimate plaintiffs in the suit, give their addresses, or provide the required information about plaintiffs' counsel; and failed to put the appellees on notice of the extent of the damages sought. 288 Kan. at 640-42. The court expounded on the general rationale behind the notice provisions of 12-105b(d) and how a lack of notice

"posed serious obstacles to the County's and the Township's full investigation and understanding of the merits of the claims advanced. Without such investigation

and understanding, the legislature's obvious desire to facilitate early and easy resolution of claims against municipalities is undermined. The notices did not serve their purpose, and they did not provide the district court with jurisdiction over the negligence and negligence per se claims." 288 Kan. at 642.

There is sufficient caselaw as cited above to support the proposition that the difference between damages claimed since actual 12-105b(d) written notice was not made and those ultimately alleged in the petition render the notice fatally deficient under K.S.A. 2010 Supp. 12-105b(d). The present case is a step in the direction of even less notice of damages than in *Zepherjon* and *Dodge City Implement* by virtue of the fact that the appellees never had any express or substantially compliant notice of the amount of Garcia's damages before she filed her petition. As was the case in *Dodge City Implement*, without the appellees' understanding of the extent of Garcia's alleged damages, the legislature's obvious desire to facilitate early and easy resolution of Garcia's claim against the appellee was undermined. Further, the fact that the City may have suggested that mediation was out of the question does not relieve Garcia of the statutory duty to provide written notice of her damages pursuant to K.S.A. 2010 Supp. 12-105b.

There can only be substantial compliance if the plaintiff makes an attempt to state each element required of the notice. *Tucking*, 14 Kan. App. 2d at 446-48. Garcia failed to substantially comply with the notice requirements of K.S.A. 2010 12-105b(d).

Affirmed.